UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARK SACHA,

                              Plaintiff,

       v.                                              **DECISION AND ORDER**
                                                        09-CV-1119S

FRANK SEDITA, III, DISTRICT ATTORNEY
OF ERIE COUNTY, NEW YORK, and THE
ERIE COUNTY DISTRICT ATTORNEY'S
OFFICE,

                              Defendants.


## I.  INTRODUCTION

       Plaintiff commenced this action pursuant to 42 U.S.C. § 1983 seeking damages for

Defendants' alleged violation of his First Amendment rights.   Plaintiff also alleges a

violation of New York  State's 'whistleblower' statute, Civil Service Law § 75-b.  Presently

before this Court are Plaintiff's Motion for Partial Summary Judgment on his First

Amendment retaliation claim[1] and Defendants' Motion for Summary Judgment dismissing

the complaint.[2]   This Court has considered the parties' submissions and finds oral

---

       [1]In support of his motion, Plaintiff submitted the Declaration of Lucinda Lapoff, Esq., with Ex. A,
the Declaration of Plaintiff Mark Sacha with Exs. A-D, a supporting Memorandum of Law, and a Statement
of Undisputed Facts. (Docket No. 59.)  Defendants responded with the Declaration of Defendant Frank A.
Sedita III with Ex. 1, (Docket No. 72), an opposing Memorandum of Law (Docket No. 73), and an
opposing Statement of Facts. (Docket No. 74.)  Plaintiff filed a reply Memorandum of Law. (Docket No.
76.)

       [2]In support of this motion for summary judgment, Defendants submitted the Declaration of
Defendant Frank A. Sedita III with Exs. A-O (Docket Nos. 60, 68), the Declaration of Adam W. Perry,
Esq., with Exs. A-D (Docket No. 61), the Declaration of Frank J. Clark (Docket No. 62), a Statement of
Undisputed Facts (Docket No. 64), and a supporting Memorandum of Law (Docket No. 65).  Plaintiff

argument unnecessary.  For the reasons that follow, Defendants' motion is granted in its entirety and Plaintiff's motion is denied.

## II. BACKGROUND

Plaintiff is a former deputy district attorney and assistant district attorney in the Erie County District Attorney's Office.  (Pl's Decl. ¶ 1, Docket No. 59-2.)  In 2007, when he held the position of deputy district attorney, Plaintiff was directed by then-District Attorney Frank J. Clark to conduct and supervise an investigation into possible Election Law violations associated with Paul Clark's[3] 2007 campaign for Erie County Executive. (Compl. ¶ 19; Decl. of Frank J. Clark ¶¶ 24-25.)  According to Plaintiff, this investigation uncovered "numerous instances of Election Law and Penal Law crimes" by Paul Clark, members of his campaign, and others, including G. Steven Pigeon, a former Erie County Democratic Party Chairman. (Compl. ¶¶ 20-23; Pl's Decl. ¶¶ 3-6.)

While the investigation was ongoing, District Attorney Clark announced that he would not seek another term as Erie County District Attorney.  (Clark Decl. ¶ 6; Pl's Decl. ¶ 35.)  Defendant Frank Sedita, III ran for and was ultimately elected to this position in November 2008. (Decl. of Frank Sedita, III, District Attorney of Erie County, ¶¶ 10-11; Compl. ¶ 55; Pl's Decl. ¶¶ 8, 10.)  Plaintiff alleges that "Pigeon, a close political and social friend of Sedita's father, Supreme Court Judge Frank Sedita, Jr. was instrumental in Sedita

---

opposed this motion with a Counter-Statement of Disputed Facts, the Declaration of Plaintiff Mark Sacha with Exs. A-E, and an opposing Memorandum of Law (Docket No. 69). Plaintiff also filed the Declaration of Lucinda Lapoff, Esq., with Exs. A-E (Docket No. 70).  Defendants filed in reply the Declaration of Defendant Frank A. Sedita III (Docket No. 77), the Declaration of Candace Vogel, Esq. (Docket No. 78), the Declaration of Carol Bridge, Esq. (Docket No. 79), the Declaration of Joseph S. Brown, Esq., with Exs. A-B (Docket No. 80), and a reply Memorandum of Law (Docket No. 81).

[3]No relation to District Attorney Clark. (Sedita Decl. ¶ 79.)

III obtaining . . . endorsements" from the Conservative, Independence, and Democratic Parties, as well as Buffalo Mayor Byron Brown. (Compl. ¶ 37.)

In December 2008, Paul Clark, the political action committee "Friends of Paul Clark," and After Care Management Service, Inc., pleaded guilty to misdemeanors related to the 2007 Election Law investigation.  (Pl's Decl. ¶  10; Clark Decl. ¶¶ 36-38.) According to District Attorney Clark, he discussed this resolution of the investigation with both Plaintiff and another assistant district attorney assigned to the investigation, and received no objections. (Clark Decl. ¶¶ 36-38.)  He informed Defendant Sedita, then District Attorney-elect, that the investigation was closed.  (Id. ¶ 44.)  Plaintiff, however, asserts that he "repeatedly objected to this arrangement" because there was more substantial evidence of serious crimes involving other persons, "and the evidence regarding Steve Pigeon was just beginning to come to light." (Compl. ¶ 50.)

Plaintiff took these concerns to Defendant Sedita, but "Sedita rebuffed [him] and directed that he should put his information in a memo." (Compl. ¶¶ 56-57.)  In response to that request, Plaintiff prepared a 13-page memo with supporting exhibits, dated December 30, 2008,[4] that "detailed the allegations against Pigeon and Tim Clark," Paul Clark's brother. (Pl's Decl. ¶ 11; Compl. ¶¶ 31, 61.)  Defendant Sedita denies reading this memo prior  to September 2009, when he was contacted about it by the press.  (Sedita Decl. ¶¶ 54-55.)

Defendant Sedita took office as Erie County District Attorney on January 1, 2009. (Sedita Decl. ¶¶ 1, 11.)  On January 2, 2009, Plaintiff was informed that he was being

---

[4]The December 30, 2008 memo has been filed under seal with this Court.

demoted from deputy district attorney to assistant district attorney in charge of arson prosecutions. (Compl. ¶ 66; Sedita Decl. ¶ 35.) Defendant Sedita asserts that this demotion was part of the creation of a streamlined reporting system, where the four deputy district attorney positions were eliminated in favor of a single deputy and a new chief counsel to the district attorney position. (Sedita Decl. ¶¶ 15-21.)  Plaintiff alleges that he was thereafter subject to a "campaign of harassment" that included denial of leave and the forced return of a county car.  (Compl. ¶ 71.)

On September 27, 2009, Plaintiff issued a statement to the press, which was referenced in a Buffalo News article of that date and printed in its entirety in the publication Artvoice.  (Pl's Decl. ¶ 15, Ex. B; Sedita Decl. ¶¶ 56-58, Exs. D, E.)  In that statement, Plaintiff asserted, among other things, the following:

> My name is Mark Sacha and I am an Assistant Erie County District Attorney. I have served in that capacity for over 22 years. . . .  Until January 2, 2009, I held the position of Deputy District Attorney with signing authority on behalf of District Attorney Clark.  I have been in charge of most of the specialized units of the District Attorney's Office and in that time supervised over 100 Assistant District Attorneys.   I have been the chief public corruption prosecutor in Erie County over the past ten years.

> As such I am thoroughly familiar with the New York State Election Law and the importance of Election Law prosecution. I was the lead prosecutor in the investigation of the Paul Clark campaign for Erie County Executive.  It is in that capacity that I feel legally, morally and ethically obligated to speak out about matters that [a]ffect the public's right to free and fair elections. . . .

> . . .

> . . . Events leading up to my demotion as well as information I have obtained since that time make clear that I was demoted for reasons related to my work on the Paul Clark investigation and the District Attorney's campaign for office.  It is now clear that no further action has been taken regarding the unfinished matters in my memo.  It is now clear that that the District Attorney has "given a pass" to a political supporter and friend.  It is clear that person who received the pass has been involved in similar conduct as to what was

discussed in my memo.  It is also clear that the reasons being given by the DA for failing to act are an effort to disguise a blatant conflict of interest and abuse of discretion.

. . .

. . .  The investigation was very successful.  It was too successful for the powers that be. Compelling evidence was discovered of various Election Law violations.  Paul Clark took some responsibility.  Roger Peck and Michael Mullins took some responsibility.  However, when Frank Sedita III took the oath of office to uphold the laws of New York State on January 1, 2009, there were matters that had not been resolved.  Those matters were addressed in my memorandum and that is why the present District Attorney used the power of his office to demote me, remove me and effectively end the investigation.

Our investigation revealed evidence of unregistered corporations, clandestine meetings, suspicious money transfers and phony explanations.  The investigation revealed that Timothy Clark was involved in many of these events as an agent of the campaign.  The prior District Attorney basically told the Buffalo News that last year.  What has not been said but is well known to District Attorney Sedita is that his friend, supporter and adviser G. Steven Pigeon working with Timothy Clark was also an agent of the Paul Clark campaign and was involved in a number of transactions described in my memorandum of December 30, 2008.

. . .

(Pl's Decl. Ex. B., Docket No. 59-2.)

Plaintiff was interviewed by senior members of the District Attorney's Office on September 29, 2009. (Sedita Decl. ¶¶ 63-64; Pl's Decl. ¶¶ 20-21, Docket No. 69-1.)  On October 5, 2009, Plaintiff was terminated from his position as assistant district attorney. (Pl's Decl. ¶ 16, Docket No. 59-2; Sedita Decl. ¶ 109, Ex. N.)  This litigation ensued.

### III.  DISCUSSION

"A motion for summary judgment may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such

issue warrant the entry of judgment for the moving party as a matter of law." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A court's function on a summary judgment motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Kaytor, 609 F.3d at 545. "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 248), cert denied 540 U.S. 811 (2003). Further, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir.2003).

Initially, Plaintiff concedes that the Erie County District Attorney's Office is not a separate legal entity capable of being sued. (Pl's Mem of Law in Opp'n at 14, Docket No. 69-2.) That Defendant will therefore be dismissed from the action. See Richir v. Village of Fredonia, No. 05-CV-076, 2008 WL 2778920, *2 (W.D.N.Y. July 14, 2008); Conte v. County of Nassau, No. 06-CV-4746, 2008 WL 905879, *1 n. 2 (E.D.N.Y. Mar. 31, 2008) (citing Hill v. City of White Plains, 185 F.Supp.2d 293, 303 (S.D.N.Y. 2002)).

## A.    Alleged violation of Plaintiff's First Amendment rights

Plaintiff contends that Defendant terminated his employment in direct retaliation for Plaintiff's public statements to the press in violation of his First Amendment rights. (Compl. ¶¶ 80-87.) "To survive summary judgment on a section 1983 First Amendment retaliation claim[,] a plaintiff must demonstrate that he engaged in protected speech, and that the

speech was a substantial or motivating factor in an adverse decision taken by the defendant." Beechwood Restorative Care Ctr. v. Leeds, 436 F.3d 147, 152 (2d Cir. 2006).

Defendant argues that Plaintiff cannot establish a prima facie case because his statements to the press were not 'protected speech' for the purposes of First Amendment analysis.  Although "a public employee does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment," Connick v. Myers, 461 U.S. 138, 140, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983), a governmental employer has interests "in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, 391 U.S. 563, 568, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968).  "Speech by a public employee is protected by the First Amendment only when the employee is speaking 'as a citizen . . . on a matter of public concern.' " Ross v. Breslin, - - F.3d - -, 2012 WL 3892396, *3 (2d Cir. 2012) (quoting Piscottano v. Murphy, 511 F.3d 247, 269-70 (2d Cir. 2007)).  This is because "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."  Garcetti v. Ceballos, 547 U.S. 410, 421, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006).  Thus, "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen." Id. at 421-22.

Plaintiff must therefore meet two separate requirements: first, that he spoke as a private citizen, and second, that he spoke on a matter of public concern. Frisenda v. Inc. Vill. of Malverne, 775 F. Supp. 2d 486, 504 (E.D.N.Y. 2011) (citing Sousa v. Roque, 578

7

F.3d 164, 169-70 (2d Cir. 2009). "If either of these requirements is not met, then plaintiff's First Amendment retaliation claim must fail as a matter of law." Id. Here, there is no question that the subject matter of Plaintiff's speech, allegations that Defendant intentionally failed to prosecute Election Law violations by a political ally, is one of public concern. "Where a public employee's speech concerns a government agency's breach of the public trust, as it does here, the speech relates to more than a mere personal grievance." Anderson v. State of N.Y., Office of Court Admin. of Unified Court Sys., 614 F. Supp. 2d 404, 428 (S.D.N.Y. 2009) (citing Skehan v. Vill. of Mamaroneck, 465 F.3d 96, 106 (2d Cir. 2006), *overruled on other grounds by* Appel v. Spiridon, 531 F.3d 138 (2d Cir. 2008)), *aff'd* 417 Fed. Appx. 92 (2d Cir. 2011); see also Garcetti, 547 U.S. at 425 ("governmental inefficiency and misconduct is a matter of considerable significance").

At issue then is whether Plaintiff's comments to the press were made as a private citizen or as a government employee. See Jackler v. Byrne, 658 F.3d 225, 237 (2d Cir. 2011) (whether a plaintiff spoke as an employee or as a citizen is "largely a question of law for the court"), *cert denied* 132 S. Ct. 1634 (2012). "Although there is no simple checklist or formula by which to determine whether the employee was speaking as a private citizen or as a public employee, in general the cases distinguish between speech that is the kind of activity engaged in by citizens who do not work for the government and activities undertaken in the course of performing one's job." Caraccilo v. Vill. of Seneca Falls, 582 F. Supp. 2d 390, 410 (W.D.N.Y. 2008)(internal quotation marks omitted). For example, the preparation of an internal memo by a deputy district attorney recommending dismissal of a case believed to be based on a false affidavit did not constitute protected speech because the memo was prepared as part of his employment duties. Garcetti, 547 U.S. at

8

414, 421.  Similarly, grievances or other written complaints about work conditions, even where made outside the chain of command, have also been found to be pursuant to an employee's official duties because such communications relate to an employee's ability to properly execute those duties.  Weintraub v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y., 593 F.3d 196, 203 (2d Cir. 2010), *cert denied* 131 S. Ct. 444 (2010); Caraccilo, 582 F. Supp. 2d at 410-11 (collecting cases).  In contrast, "[e]mployees who make public statements outside the course of performing their official duties retain some possibility of First Amendment protection because that is the kind of activity engaged in by citizens who do not work for the government," such as "writing a letter to a local newspaper, or discussing politics with a co-worker."  Garcetti, 547 U.S. at 423 (internal citations and quotation marks omitted). Additional factors to be considered when determining whether an employee spoke as a private citizen include the employee's job description, the person or persons to whom the speech was directed, and "whether the speech resulted from special knowledge gained through the [employee's] employment."  Caraccilo, 582 F.Supp.2d at 405.  No one factor is dispositive, and the inquiry is a practical one.  Garcetti, 547 U.S. at 424-25; Caraccilo, 582 F. Supp. 2d at 405.

Here, if Plaintiff's retaliation claim had been based solely on the December 30, 2008 memo itself and his internal communications regarding the same, there is no question that his speech would be excluded from the protections of the First Amendment pursuant to Garcetti. 547 U.S. at 421. His claim, however, is also based on his subsequent September 27, 2009 statement to the press regarding that memo and his opinions regarding the 2007 Election Law investigation. (Pl's Decl. ¶ 15, Ex. B, Docket No. 59-2.) As such, it would appear at first blush akin to a letter to a newspaper, an activity engaged in by citizens who

do not work for the government.  <u>Garcetti</u>, 547 U.S. at 423.  The mere fact, however, that Plaintiff repeated his previous privately expressed concerns in a public forum does not, by itself, bring his statement within the protective scope of the First Amendment.  <u>Caraccilo</u>, 582 F.Supp.2d at 411 (collecting cases); <u>see</u> <u>Garcetti</u>, 547 U.S. at 423 (public statements are protected only to the extent that they are made "outside the course of performing [one's] official duties").

This Court finds that Plaintiff spoke to the press in his capacity as an assistant district attorney, and therefore his statement to the press is not entitled to the protection of the First Amendment.  Initially, Plaintiff expressly stated that he "was the lead prosecutor in the investigation of the Paul Clark campaign for Erie County Executive.[5]  *It is in that capacity* that I feel legally morally and ethically obligated to speak out about matters that [a]ffect the public's right to free and fair elections."  (Pl's Decl. Ex. B (emphasis added).) Although a plaintiff's characterization of his own speech is not dispositive, <u>Ross</u>, 2012 WL 3892396 at *6, here, Plaintiff's opinions that the 2007 Election Law investigation had not been completed and that Defendant had "'given a pass' to a political supporter and friend" were based on Plaintiff's official involvement in that investigation. (Pl's Decl. Ex. B.) Accordingly, this is not a case "in which the fact of employment is only tangentially and insubstantially involved in the subject matter of the public communication made by a [plaintiff]." <u>Pickering</u>, 391 U.S. at 574; <u>see</u> <u>Garcetti</u>, 547 U.S. at 422 (noting that the letter to the newspaper in <u>Pickering</u> "had no official significance").

---

[5]In light of this assertion, the Court finds the fact that Plaintiff was an arson prosecutor at the time the statement was issued to the press to be of no moment.  (<u>See</u> Pl's Mem of Law in Opp'n at 7, Docket No. 69-2.)

Instead, "it is undisputed that the subject matter of [P]laintiff's speech related to his employment. In fact, it was more than just related; rather, one of plaintiff's core job functions" was to investigate and prosecute criminal violations of law. Brady v. County of Suffolk, 657 F. Supp. 2d 331, 344 (E.D.N.Y. 2009). Underlying both the December 30, 2008 memo and his September 2009 statement to the press is Plaintiff's professional determination, made as a part of the investigation he was directed to undertake as part of his official duties as a deputy district attorney, that Pigeon should have been prosecuted. See Bearss v. Wilton, 445 Fed. Appx. 400, 403 (2d Cir. 2011) (plaintiff spoke to the newspaper as the city's information technology coordinator and therefore her statements were " 'speech that owes its existence to a public employee's professional responsibilities' " (quoting Garcetti, 547 U.S. at 421)); Foley v. Town of Randolph, 598 F.3d 1, 7-8 (1st Cir. 2010) (public statements made while in uniform and on duty were made in official capacity where plaintiff would naturally be regarded as speaking as such). In his public statement, Plaintiff affirmatively relied on his experience as an assistant district attorney and the special knowledge he gained by virtue of his position as lead prosecutor in the 2007 Election Law investigation, thereby belying his current assertion that he was speaking as a private citizen. Brady, 657 F.Supp.2d at 344 (speech had no relevant civilian analogue where it "reflected [plaintiff's] special knowledge about the situation gained as a Highway Patrol officer"); Caraccilo, 582 F.Supp.2d at 405 (reliance on specialized knowledge gained from employment relevant factor in determining nature of speech). Indeed, because Plaintiff's statement to the press does not detail the specific evidence that supports his conclusions, nor is the same readily available to the public, he is not merely commenting on publicly disclosed facts, but is instead implicitly asking the reader to rely

on his professional judgment as, in his words, "the chief public corruption prosecutor in Erie County over the past ten years." (Pl's Decl. Ex. B.)  The September 2009 statement therefore implicated the "core duties" of his employment, and falls outside the protection of the First Amendment.  Nagle v. Marron, 663 F.3d 100, 107 (2d Cir. 2011) (quoting Weintraub, 593 F.3d at 198).

Additionally, to the extent that Plaintiff's public statement asserts that, based on his investigation, he should have been permitted to prosecute Pigeon but was prevented from doing so by Defendant, it is more akin to those unprotected communications, such as grievances, that pertain to an employee's ability to properly execute his or her duties. Weintraub, 593 F.3d at 203. Thus, the mere fact that Plaintiff made his conclusions public cannot alter the fact that the September 2009 statement owes its existence to Plaintiff's professional responsibilities as a deputy/assistant district attorney. Garcetti, 547 U.S. at 421.  To conclude otherwise would vitiate a district attorney's ability to control public statements by assistant district attorneys regarding criminal investigations.

Finally, in concluding that Defendant is entitled to summary judgment on this claim, this Court need not, and therefore will not, pass on the veracity of Plaintiff's underlying allegations. See Cioffi v. Averill Park Cent. Sch. Dist. Board of Ed., 444 F.3d 158, 167 (2d Cir. 2006) (truthfulness of statements has no bearing on whether speech is personal or public), *cert denied* 549 US 953 (2006).

## B.    Alleged Violation of New York Civil Service Law § 75-b

Although a conclusion that a plaintiff was speaking as a public employee prevents a First Amendment claim, this does not mean that a public employee with legitimate claims about workplace misconduct is without legal recourse.  A "powerful network of legislative

enactments – such as whistle-blower protection laws and labor codes – [are] available to those who seek to expose wrongdoing." Garcetti, 547 U.S. at 425; Ross, 2012 WL 3892396 at *6; Ruotolo v. City of New York, 514 F.3d 184, 189 n.1 (2d Cir. 2008).  At issue in Plaintiff's second cause of action is New York's whistleblower statute, Civil Service Law § 75-b, which prohibits a public employer from, among other things, taking an adverse employment action against an employee who "discloses to a governmental body information . . . which the employee reasonably believes to be true and reasonably believes constitutes an improper governmental action." § 75-b (2)(a)(ii).

A plaintiff pursuing a claim pursuant to § 75-b, however, must comply with the notice requirements of New York County and General Municipal Law. Dingle v. City of New York, 728 F. Supp. 2d 332, 348 (S.D.N.Y. 2010); see N.Y. General Municipal Law §§ 50-i, 50-e; County Law § 52.  An action cannot stand against a county for personal injury or property damage unless a notice of claim has been served upon the county in compliance with General Municipal Law § 50-e. See § 50-i (1).  Thus, as a condition precedent to the commencement of such an action "against a public corporation . . . or any officer, appointee or employee thereof," a notice of claim must be served within ninety days after the claim arises. N.Y. General Municipal Law § 50-e (1)(a).  Further, New York County Law § 52 also requires notice pursuant to § 50-e for any claim for damages against a "county, its officers, agents, servants or employees." "Federal courts do not have jurisdiction to hear state law claims brought by plaintiffs who have failed to comply with the notice of claim requirement, nor can a federal court grant a plaintiff permission to file a late notice of

claim."[6] <u>Dingle</u>, 728 F.Supp.2d at 348-49.

Defendant contends that this cause of action must be dismissed because Plaintiff has failed to comply with New York's notice requirements. (Def's Mem of Law at 22, Docket No. 65.)  Plaintiff does not dispute that no notice was filed, but argues that such notice is not required because the suit is against Defendant in his individual capacity. (Pl's Mem of Law in Opp'n at 14, Docket No. 69-2.)  This argument appears nonsensical, as it directly contradicts Plaintiff's further assertion that Defendant is subject to suit because, in his *official* capacity as the District Attorney of Erie County, Defendant is a 'public employer' within the meaning of Civil Service Law § 75-b.  (<u>Id.</u>) Regardless, to the extent Plaintiff is seeking to pursue a claim against Defendant as an individual, such a claim must be dismissed.  "[S]ection 75–b only provides a cause of action against government entities, not individuals, because it does not include individuals in its definition of public employer". <u>Fry v. McCall</u>, 945 F. Supp. 655, 666 (S.D.N.Y. 1996); <u>see</u> <u>Moore v. County of Rockland</u>, 192 A.D.2d 1021, 1024, 596 N.Y.S.2d 908, 911 (3d Dep't 1993).  Further, the notice requirements of General Municipal Law § 50-e are applicable when a District Attorney is sued in his or her official capacity.  <u>Hickey v. City of New York</u>, No. 01-CV-6506, 2004 WL 2724079, *22 (S.D.N.Y. Nov. 29, 2004), *aff'd* 173 Fed. Appx. 893 (2d Cir. 2006); <u>Drakeford v Brooklyn Dist. Attorney</u>, 266 A.D.2d 134, 700 N.Y.S.2d 1 (1st Dep't 1999), *lv dismissed* 95 N.Y.2d 877 (2000); <u>see also</u> <u>Walker v. City of New York</u>, 974 F.2d 293, 301 (2d Cir.

---

[6]It should also be noted that because more than one year and 90 days have passed since Plaintiff's cause of action accrued with his termination, even the state court would be without authority to grant such an application unless this statute of limitations had been tolled.  <u>Pierson v. City of New York</u>, 56 N.Y.2d 950, 954, 439 N.E.2d 331 (1982); <u>Alvarez v. New York City Housing Auth.</u>, 97 A.D.3d 668, 668, 948 N.Y.S.2d 648, 649 (2d Dep't 2012). No grounds for tolling is apparent on this record.

1992) (when acting a manager of a district attorney's office, a district attorney acts as a county policymaker), *cert denied* 507 U.S. 961, 972 (1993).  The Court is therefore obligated to dismiss this claim as well.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is granted in its entirety and the complaint is dismissed.

## V. ORDERS

IT HEREBY IS ORDERED that Defendants' Motion for Summary Judgment (Docket No. 60) is GRANTED and the complaint is dismissed;

FURTHER, that Plaintiff's Motion for Partial Summary Judgment (Docket No. 59) is DENIED;

FURTHER, that the Clerk of Court shall close this case.

SO ORDERED.

Dated: October 21, 2012
        Buffalo, New York

                                        /s/William M. Skretny
                                      WILLIAM M. SKRETNY
                                           Chief Judge
                                    United States District Judge